DUCKER, JUDGE:
Claimants, insurers against fire, paid the County Court of Green-brier County, West Virginia the sum of $88,722.00 as the loss in a fire totally destroying on November 23, 1970 a building owned by the County Court and known as the “old jail” building in Lewisburg, West Virginia, such insurance loss payments having been in four separate amounts of $22,180.50 each by the four claimants herein. Claimants now, by way of subrogation to the rights of the County Court under the several insurance policies, seek reimbursement from the respondent, the West Virginia Department of Highways, alleging that the fire was caused by the negligence of the respondent in its operation of its garage or shop building which first caught fire, then spreading to and consuming the insured old jail building adjacent to the garage building.
The evidence as to the cause of the fire was the testimony of two employees of Department of Highways, namely, Henry Butler and Ghaile Shortridge, who were at the scene of the fire when it originated. Butler was cleaning with gasoline a “center lining machine”, a machine with which white lines are painted on roads. The machine had been brought inside the shop or garage building to be cleaned because it had, as the witness said, “froze up” in the then ten degree weather and couldn’t be cleaned outside, and Shortridge was the *72 “night gas man and radio man”, who was in the front part of the shop building to see if anyone was on the two-way radio or phone when he heard a slight “poof” and looked back at the center line machine and saw it was on fire.
Butler testified that at about six o’clock in the afternoon of the day of the fire he proceeded to clean with gasoline the “guns” of the machine and had cleaned two guns and had started out a little side door of the garage with the buckets containing some of the gasoline he had used when Shortridge called and said there was a fire there. Butler said he “dropped or throwed the buckets down and ran back in there and at that time it was burning”, and further that he got the machine out of the shop the best he could and “grabbed a fire extinguisher and it wouldn’t work and grabbed another one and couldn’t get it to work”.
Shortridge testified that the machine was usually cleaned outside but as it was a cold night it was brought inside to clean. He also testified that the fire was first back of the guns on the striping machine and on the floor and the hoses around the guns, and that there was a gas heater in the bathroom located “between five and eight feet” from the machine, and that in his opinion gasoline on the floor back of the machine was ignited by the bathroom hot water heater. There was no contradiction of the testimony of Butler and Shortridge and the Court sees no basis for any contradiction thereof.
From the evidence the Court can only conclude that the fire was the result of the negligence of the respondent. The cleaning of the paint striper machine in the shop or garage with the gasoline so close to a fire in the gas heater only a short distance away, and the failure to have workable fire extinguishers available are facts which show that reasonable care was not taken to do the work at hand in a safe manner.
The first question raised by the respondent is that it is not liable because the claimants as subrogees have no greater rights than their subrogor, the County Court, has, and that the County Court as a subdivision of the State cannot sue the respondent, an agency of the State, and therefore the claimants have no right to maintain a suit in this Court. While it is true that a subrogee has no greater right than *73 his subrogor, the resulting question is whether the County Court could have maintained this action.
In the case of City of Morgantown v. Board of Governors of West Virginia University, 8 Ct. Cl. 41, this Court was required by the Supreme Court of Appeals of West Virginia to take jurisdiction of a claim of a municipal corporation against a State agency, and the claimant City was held not to be such a State agency as would prevent it from suing the State in this Court. Although a County Court may be considered in many respects as just a geographical or political subdivision of the State with many of the functions and sovereignty of the State, nevertheless, it lays its own levies for taxes, has its own funds, conducts its own fiscal and contractual affairs, and as a corporation is especially authorized to sue and be sued, to contract and be contracted with, and to handle its own financial affairs. So we must conclude that like cities, County Courts can maintain actions in this Court under the statutory jurisdictional provisions relating to this Court. And thus the claim which inured to the County Court of Greenbrier County and which passed to the claimants is within the jurisdiction of this Court.
Inasmuch as we conclude there is liability on the part of the respondent, the question of the amount of damages must now be determined. The claimants seek recovery of the total amounts paid by them in their settlement of the loss, while the respondent says the market value of the property destroyed was only approximately $22,370.
The claimants, insurers, base their claim upon the value fixed by appraisers who determined in 1969 their values for blanket insurance policies issued upon the County Court and all county buildings, of which the old jail was one, and which valuations were based upon replacement values approved by the West Virginia Inspection Bureau. The respondent relies on an appraisement made by D. K. Hammond, a real estate broker and appraiser, as to the market or sale value of the building destroyed. The Hammond appraisal was made from information furnished him after the fire. He testified that there were three methods of appraisal in fixing values, namely, the market appraisal to the entirety which in this instance couldn’t be done because the entirety was not existing, the cost appraisal which also could not be done, and the income approach which he did. On cross *74 examination Mr. Hammond admitted that there was approximately 3800 square feet of space, but not necessarily usable space, in the building which he had not included in the $18,000 total figure, and that he had used $1.15 per square foot as the basis of his rental value figure. So $4370 for the additional footage could be added to $18,000, making total of $22,370, on an income approach basis, which he said “usually indicates what a prudent buyer is willing to pay for an income piece of property, regardless of what it costs to build”. The appraisers for the claimants have based their figures on what they consider the sound value basis, that is reproduction new at $136,946 less thirty-five percent depreciation, resulting in the sum of $88,722.00. Claimants have in no way shown what the value was on the basis of a sale by a willing seller to a willing buyer both free of any compulsion. And while respondent’s evidence on the question is closer to the rule, yet it is limited to the basis of rental value. So from the evidence the question is left quite open and conjectural.
The fact that the building was insured on the basis of the cost of reproduction does not determine what it could have been sold for in the market. Neither does the rental value quite meet the rule applicable, although it more nearly approaches the rule.
Buildings in different locations, though costing the same to build, bring different prices upon sales. Likewise old buildings are very often not worth rebuilding when better locations are available. Here we have an old building which has been completely destroyed. It was not being used for the purpose for which it was built, although after alterations and interior remodeling it had been used by the Welfare Department. There were no comparables in sales to furnish any help in arriving at a market value of the property. The testimony is to the effect that appraisers for the insurance companies, the claimants herein, determined the value of the building to be $88,720 after deducting thirty-five percent depreciation from a valuation of $136,496.00, which they said was a sound value. Such valuation was submitted to and approved by the County Court, and filed with the West Virginia Inspection Bureau which promulgated the fire insurance premium rate on such figures for policies to be written on a special form for public institutions and property. Although there is some testimony to the effect that sound value is not reproduction new less depreciation, yet the witness, Phillips, stated the building had a “re *75 placement cost of $136,496.00 and a suggested sound value of $88,722.00”. Whatever may be the difference in terminology as to the method of determining the value, it is immaterial as such valuation is not according to market value.
Furthermore, the element of contractual liability enters into the consideration in this case. Here the insured paid premiums on the basis of the valuation of $88,722.00 agreed to by the claimants and the insured, and there was a total loss of the property. The value of the property was fixed by the parties and the claimants were bound by their contracts, and they honored, by payment without question, their liability in the matter. But this fact cannot be the basis for their recovery by way of subrogation here, as the County Court could not have recovered on that basis against the respondent. The County Court had no such or any contract with the respondent and it could recover only the fair market value of the building determined on the willing seller and willing buyer basis.
In view of the lack of evidence as to market value and the practical impossibility of procuring any such evidence because the building was totally destroyed, we can only attempt by way of compromise to arrive at what we consider some fair estimate of the market value, and thus try to do justice and render an equitable decision in the matter. Accordingly, we are, therefore, of the opinion to and do make the following awards to:
(1) Buckeye Union Insurance Company $11,000.00
(2) Federal Insurance Company $11,000.00
(3) Globe Indemnity Company $11,000.00
(4) United States Fidelity & Guaranty Co. $11,000.00